**SO ORDERED.**

**SIGNED this 18 day of April, 2005.**



_____
**ROBERT E. NUGENT**
**UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DAVID GOLDSTEIN, | ) | Case No. 03-15701 |
| PEGGY GOLDSTEIN, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| EDWARD J. NAZAR, Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 04-5052 |
| | ) | |
| ROBERT McCOMB, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The trustee brought this adversary proceeding to avoid and recover an alleged preferential transfer in the amount of $10,013.72 made by debtor Peggy Goldstein to her father Robert McComb

1

approximately eight months before debtors filed their chapter 7 bankruptcy. The central disputed issue is whether the transfer was "for or on account of an antecedent debt owed by the debtor" as required by 11 U.S.C. § 547(b)(2).[1] The case was tried on February 15, 2005 and the matter was taken under advisement.

## Jurisdiction

This is a core proceeding over which the Court has subject matter jurisdiction.[2]

## Factual Background

The parties' stipulations and evidence at trial established the following facts.[3]

On September 18, 2002, Robert McComb (McComb) purchased at sheriff's sale a home at 1943 S. Custer, Wichita, Kansas for $27,780. The sheriff's deed conveyed the property to McComb and his two daughters, Barbara K. Greenstein and Peggy S. Goldstein (Debtor). McComb frequently purchased properties at foreclosure. He then fixed up the properties and either rented or resold them. Being Peggy Goldstein's father, McComb is an insider within the meaning of § 547(b)(4)(B) and § 101(31)(A)(I).

On December 19, 2002 McComb and his wife bought Barbara and Peggy's interests in the Custer house. Barbara and Peggy were each paid $10,000 at closing.[4] McComb described the $10,000 payments as "seed money" to encourage his daughters to get started with real estate investing. McComb

---

[1] Unless otherwise noted, all subsequent statutory references are to the Bankruptcy Code, Title 11 of U.S.C. § 101 *et seq.*

[2] 28 U.S.C. § 157(b)(2)(F); 28 U.S.C. § 1334(b).

[3] *See* Dkt. 18, Stipulations in Pretrial Order.

[4] According to the Real Estate Purchase Contract, the $10,000 was paid to Barbara Greenstein and her husband Terry and to Peggy Goldstein and her husband David. *See* Ex. C.

2

expected his daughters to return the funds if they did not use them to purchase real estate. He considered the money to be his unless and until debtor used it for purchasing real estate. In both interrogatory responses and live testimony, he stated that the money "was not hers [Peggy's] unless she used it to purchase real estate."[5] He also testified that it was his "purpose not to make a debt" but to furnish money to Peggy so she could start a business. Peggy testified that she felt obligated to return the money if she did not use it for a real estate investment and that she understood that her father gave her the money with the stipulation that it be used only for real estate investment. Barbara Greenstein testified that she had a like understanding. She used the money to acquire a house and now owns several rental properties. She has not returned any money to McComb and does not consider that she is obligated to do so.

Peggy deposited the $10,000 in a bank account at Intrust Bank on January 2, 2003.[6] The account was in Peggy's name only so that the funds would not be commingled with any others and so that her husband, whose fragrance business in Canada had failed, would not have access to it. Debtor started a new job with Starbucks in December of 2002 and had neither time nor financial ability to purchase and fix up homes. Peggy ultimately decided that she did not want to get involved with real estate investing and that she should return the money to her father. On February 28, 2003 debtor withdrew the $10,000 together with accrued interest from the account and gave McComb a check for $10,013.92. No other activity or transactions occurred in the Intrust account. Debtor and her husband were insolvent at the time of the

---

[5] Exhibit 13, Interrogatory no. 4.

[6] From the bank records introduced at trial, it appears that debtor deposited the funds in a Personal Investors Maximizer account, having account no. 0041028392. Debtor and her husband maintained a separate checking account 0040979180.

payment.[7]

Debtors filed a chapter 7 bankruptcy on October 16, 2003. Debtors scheduled McComb as an unsecured creditor on Schedule F having an unsecured claim of $110,000.[8] McComb loaned this money to the Goldsteins in1999 for what turned out to be an unsuccessful fragrance venture in Canada.[9] Debtors did not schedule the $10,000 "seed money" given by McComb as a debt but did disclose the return of the $10,000 in the Statement of Financial Affairs. McComb did not file a proof a claim in debtors' bankruptcy. Other than the $10,000, debtors only had about $2,200 in assets available for unsecured claims of approximately $700,000.

Analysis

To avoid debtor's $10,000 transfer to McComb, the trustee has the burden to establish each of the statutory elements of a preferential transfer.[10] The trustee must show that debtor's transfer of the $10,000 to McComb was (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt; (3) made while debtor was insolvent; (4) made to an insider between 90 days and one year before debtor filed bankruptcy; and (5) enabled McComb to receive more than he would have received in a chapter 7 case.[11] The purpose of the trustee's preference avoidance powers is to facilitate an equal

---

[7] Section 547(b)(3).

[8] Initially scheduled at $11,000, McComb's debt was actually $110,000 as set out in the debtors' amendment to their Schedule F filed on February 11, 2004. *See* Ex. 2.

[9] Ex. M.

[10] *In re Ogden*, 314 F.3d 1190, 1196 (10th Cir. 2002); *In re Dupuis*, 265 B.R. 878 (Bankr. N.D. Ohio 2001).

[11] Section 547(b).

4

distribution of debtor's assets among the debtor's creditors.[12]

There is no dispute here that McComb is a creditor of debtor, having loaned debtors $110,000 during the year 1999; debtors scheduled McComb as an unsecured creditor in this amount. The parties stipulated that debtors were insolvent at the time of the transfer and that McComb is an insider. The transfer occurred within the one year look back period from the date of the bankruptcy. Nor is there any dispute that given the amount of unsecured claims, McComb received more from the transfer than he would have received in a chapter 7 pro rata distribution.

Only the second statutory element – that the transfer was made for or on account of an antecedent debt – is in controversy here.[13] The trustee contends that Peggy was obligated to return the funds to McComb if she did not pursue a real estate investment and that McComb had a claim against debtor.[14] McComb counters that the $10,000 was a conditional gift to debtor, conditioned upon debtor using the money to get started in the real estate market[15] and that Peggy merely returned the money to McComb when the condition never occurred.

---

[12] *In re Ogden*, 314 F.3d 1190, 1196 (10th Cir. 2002).

[13] It is important to note that the trustee does not contend that the $110,000 loaned by McComb to debtors in 1999 is the "antecedent debt." Rather, it is the $10,000 seed money provided by McComb in December 2002 that the trustee contends is the antecedent debt.

[14] *See* 11 U.S.C. § 101(5)(A) defining the term "claim" to include a right to payment, whether or not contingent, matured, or unliquidated, and § 101(12) defining a "debt" as liability on a claim.

[15] The Court notes that the conditional gift theory is somewhat at odds with McComb's testimony that he considered the $10,000 *his* money. Under this analysis, the $10,000 would never have become part of debtor's bankruptcy estate. Because McComb relinquished control over the $10,000, the Court concludes that it became property of debtor's estate, McComb's testimony notwithstanding. *See* § 541(a)(1).

5

At issue here is whether McComb's payment to Peggy was a gift or a loan. In Kansas, the elements necessary to establish that a transfer is an inter vivos gift are: (1) an intention to make a gift; (2) delivery; and (3) acceptance of the gift by the donee.[16] Kansas case law suggests that less compelling evidence to establish donative intent is required to support a gift to a close relative than necessary to support a gift to a stranger and that where the relationship of the parties is such that the donee has a natural claim on the donor's generosity, the courts look with favor on a claim of gift.[17]

On its face, McComb's testimony straddles the gift versus loan dilemma. He denies that the money was a gift stating that it would only become Peggy's if she used it to purchase real estate. McComb testified that he considered the $10,000 *his* money until that occurred. If this were so, the $10,000 would *never* have become part of debtor's bankruptcy estate. On the other hand, Peggy exerted dominion and control over the funds, depositing them in a separate account. After weighing the evidence, the Court concludes that at the time, McComb intended to make a gift, that he intended the gift to be absolute, that he delivered the funds to Peggy, and that she accepted them. The transfer to Peggy was a gift.[18]

As to the conditional nature of the gift, many states recognize various species of "conditional gifts." Whether the gift is absolute or conditional is a question of the donor's intention which is to be determined

---

[16] *Hudson v. Tucker*, 188 Kan. 202, 211, 361 P.2d 878 (1961); *In re Estate of Button,* 17 Kan. App. 2d 11, 13, 830 P.2d 1216 (1992) (monies transferred to son were loans rather than gifts); *Herman v. Goetz*, 204 Kan. 91, 96, 460 P.2d 554 (1969).

[17] *Hudson*, 188 Kan. at 212 (noting rule has frequent application where gifts are made by a parent to a child).

[18] *Hess v. Hartwig*, 83 Kan. 592, 112 P. 99 (1910) (Act of redelivery of property for safekeeping did not nullify the gift); *Heiman v. Parrish*, 262 Kan. 926, 942 P.2d 631 (1997) (recognizing principle that gift must be absolute and irrevocable); *Herman v. Goetz*, 204 Kan. 91, 96, 460 P.2d 554 (1969).

6

from the donor's express declaration at the time of the gift.[19] "Where the gift is conditioned upon the performance of some act by the donee and that condition is not fulfilled, the donor may recover the gift."[20] The Court questions whether Kansas law recognizes a conditional gift as a valid gift inter vivos. In *Heiman v. Parrish*,[21] the Kansas Supreme Court determined that the gift of an engagement ring was made in contemplation of marriage and was a conditional gift. The Court has not found any Kansas case outside the context of gifts in contemplation of marriage in which a conditional gift has been recognized.[22]

Even if conditional gifts are cognizable at Kansas law, there was no evidence presented to the Court of any express declarations by McComb at the time of the gift to Peggy that indicated he intended the gift to be conditional. Nor is it clear that McComb had a right to recover the gift. As noted above, that right would only accrue upon the failure of the condition subsequent. In the instant case, that failure would have occurred if, for instance, Peggy had spent the $10,000 on something other than buying investment real estate. In fact, Peggy never spent the money at all. Only when McComb's right of recovery arose would he have had a claim to support the alleged "antecedent debt."

The Trustee did not prove the existence of a creditor-debtor relationship between McComb and

---

[19] 38 Am. Jur. 2d, *Gifts*, § 72 (2005).

[20] *Id.*

[21] 262 Kan. 926, 942 P.2d 631 (1997).

[22] It would appear that other jurisdictions recognize conditional gifts outside the context of marriage and engagements. It is a matter of the donor's intent whether the gift is absolute or conditional. *See* 38 Am. Jur. 2d, *Gifts* § 72 (2005).

7

debtor with respect to the $10,000.[23] While McComb's purpose in making his gift was that the fund would be used for real estate investing, he took no measures to ensure that the money would be repaid by debtor in the event she decided not to invest in the real estate market. There is no evidence of an agreement on repayment terms. While debtor certainly believed she had a moral obligation to return the monies to McComb if she did not use them for real estate purchases, she had no legal obligation to repay the money. With respect to the $10,000, there was no antecedent debt. The Court therefore concludes that Peggy returned the gift to her father, not out of any legal obligation but out of a perceived (and, no doubt valid) moral obligation to her father.[24] The Court concludes that the return of a gift, in the absence of evidence of conditions attaching to the gift, is not a transfer on account of an antecedent debt.[25] Accordingly, the Trustee has failed to prove that the Peggy's transfer of the money to McComb was a preferential transfer under § 547(b).

The trustee's complaint to avoid the transfer is DENIED and judgment should be entered in favor of defendant Robert McComb. A judgment on decision will issue this day.

IT IS SO ORDERED.

---

[23] *See In re Dupuis*, 265 B.R. 878, 882 (Bankr. N.D. Ohio 2001) (For transfer of property to be avoided as preference, it must have been made on account of debtor-creditor relationship.) A "loan" is described as a situation where the borrower receives money over which he or she exercises dominion and which he or she expressly or impliedly promises to repay. *See Coe, Administratrix v. First Nat'l Bank & Trust Co.*, 219 Kan. 352, syl. ¶ 1, 548 P.2d 486 (1976).

[24] *See* 38 Am. Jur. 2d, *Gifts* § 71 (2005) ("[O]nce a gift has been completed by delivery, return of the subject matter of the gift to the donor will not of itself negate the transaction.").

[25] This is not to say that the return of a gift is never an avoidable transfer. The transfer of the funds back to McComb without consideration might, in the presence of other badges of fraud, have been avoided as a fraudulent transfer, either under § 548 or the Kansas Uniform Fraudulent Transfer Act, KAN. STAT. ANN. § 33-201, *et seq*. The Trustee did not allege a cause of action under either statute in this adversary proceeding.

8

# # #